UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:25-cv-00564

| | |
|---|---|
| BETHANY K. LANEY, | ) |
| Plaintiff, | ) |
| v. | ) COMPLAINT and |
| | ) JURY TRIAL DEMAND |
| NOVANT HEALTH, INC., | ) |
| Defendant. | ) |

Plaintiff Bethany K. Laney ("Laney"), by and through counsel, brings this action for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* against Defendant Novant Health, Inc. ("Novant"). Laney additionally brings a claim under North Carolina common law for wrongful discharge in violation of public policy.

## THE PARTIES

1. Laney is an adult individual who is a resident of Wingate, North Carolina.

2. Novant is a domestic corporation registered and in good standing in the State of North Carolina with its principal place of business located at 2085 Frontis Plaza Boulevard, Winston Salem, North Carolina 27103.

## JURISDICTION AND VENUE

3. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under Title VII for unlawful discrimination and retaliation.

4. This Court has personal jurisdiction because Novant conducts substantial business in Mecklenburg County, North Carolina, which is located within this judicial district.

5. Venue is proper in this judicial district because Novant has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Mecklenburg County, North Carolina, which is located within this judicial district.

## COVERAGE ALLEGATIONS

6. At all times relevant to this action, Laney was an "employee" covered by the protections of Title VII, within the meaning of 42 U.S.C. § 2000e(f).

7. Novant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

8. Novant employed at least fifteen (15) employees at all relevant times.

9. Laney satisfied her obligation to exhaust her administrative remedies by timely filing a Charge of Discrimination against Novant with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 430-2024-01857) alleging retaliation and discrimination based on sex on or about May 10, 2024. The EEOC issued a Notice of Suit Rights on May 1, 2025, and Laney timely brings this action within ninety (90) days of her receipt thereof.

## LANEY'S FACTUAL ALLEGATIONS

10. Novant is an integrated network of physician clinics, outpatient centers, and hospitals, including Novant Health Matthews Medical Center.

11. Laney began her employment with Novant at its Matthews Medical Center as a Public Safety Corporal in 2022. Novant promoted Laney to the Officer in Charge for the night shift (the "Bravo Shift") in or about July 2023.

12. At all relevant times, Laney met or exceeded Novant's legitimate employment expectations, as evidenced by positive performance reviews and no disciplinary actions before complaining about sexual harassment.

13. In or about June 2023, Novant hired a new Public Safety Officer named Geoffrey Clogston ("Clogston"). Almost immediately, Clogston began sexually harassing female employees. During the initial training period, several other female staff members made comments to Laney about sexually inappropriate comments Clogston made to them.

14. Laney reported the other female coworkers' complaints about sexually inappropriate comments to Sergent Brian Giles ("Sgt. Giles") and Sergent Brian Desantis ("Sgt. Desantis") multiple times. Sgt. Giles and Sgt. Desantis told Laney they would investigate and speak with Clogston about his sexually inappropriate comments.

15. However, it became apparent to Laney that Sgt. Giles and Sgt. Desantis never acted on her complaint. For example, after reporting the other female coworkers' complaints, Clogston commented to Laney and Officer Joshua Eudy ("Officer Eudy") that Clogston enjoyed watching psychiatric patients in the Emergency Department change their clothes. Officer Eudy and Laney told Clogston his comment was inappropriate.

16. By way of another example, Clogston "joked" with Laney that he wanted to come up to her and forcibly "make out with [her]." Laney told Clogston, that as a victim of sexual assault, she did not appreciate him joking about sexually assaulting female employees.

17. On November 9, 2023, Laney accidentally brushed against Clogston's hand. Clogston told Laney "I knew you always wanted me." Laney denied Clogston's comment and told him "in your dreams." Clogston then stated "yes, I dream about that and it makes me wake up all sweaty." Laney told Clogston she would report Clogston's comments to Novant's Human Resources department and he laughed at her. Other officers from the Bravo Shift were present including Officer Andre Traynham and Officer Codero Andrews ("Officer Andrews").

18. Around 11:00 p.m. on November 9, 2023, Laney and Officer Andrews approached the Emergency Department desk and observed Clogston. Clogston was loudly watching a baseball game on his phone in view of other staff and patients. Laney and Andrews approached Clogston and Laney informed Clogston he could not listen to something on his phone so loudly when in view of Novant's patients. She also informed Clogston that Novant's staff members previously complained about him watching videos on his phone loudly. Laney told Clogston he should purchase some headphones so he would not disrupt the patients and staff. Clogston responded by telling Laney if he was wearing headphones, he would not be able to hear what was happening around him. At that point, Clogston turned the volume on his phone up louder and began ignoring Laney. Laney then approached the Emergency Department check-in desk and spoke with Stephanie Coburn ("Coburn"), Novant's Registration Team Member. Laney notice the volume from Clogston's phone get even louder. Coburn told Laney that many patients and staff members had previously complained about how loud Clogston's phone was when he was in the Emergency Department. Coburn also informed Laney that Clogston often made inappropriate comments that made people feel unsafe.

19. Around 1:17 a.m. on November 10, 2023, Laney entered the public safety office and encountered Officer Eudy and Officer Andrews. Officer Eudy asked Laney to step outside of the office to speak with him. Officer Eudy informed Laney that Clogston complained to him that Laney made jokes about him being old because he could not hear his phone that he found to be inappropriate. Laney explained to Officer Eudy what happened, as described above in Paragraph 18. Officer Eudy served in a subordinate role to Laney.

20. Later in the shift, Laney emailed Sgt. Giles and Sgt. Desantis requesting a meeting to discuss the incidents with Clogston, described above in Paragraphs 17 through 19, which was set for November 13, 2023 at 11:00 p.m.

21. On November 13, 2023, Laney met with Sgt. Desantis and described the incident involving Clogston, as described above in Paragraph 18. Laney told Sgt. Desantis that Clogston refuses to listen to her as the Officer in Charge and that she believed he was intentionally ignoring her because she is a female. Sgt. Desantis agreed. He then told her that if she wanted something to be done about it, she needed to write a statement. He told Laney that he believed Clogston planned to "quit soon" and would not be employed by Novant much longer. However, if Laney did write a statement, it would likely cause Clogston to quit before he had to write a response statement. In the end, Sgt. Desantis told Laney that even if she wrote a statement and filed a formal complaint against Clogston, the result would be a verbal counseling against Clogston.

22. On or about November 17, 2023, Sgt. Desantis informed Laney that Clogston complained to Captain Edward Aston ("Cpt. Aston") about Laney's "inappropriate jokes" about his age. Sgt. Desantis informed Laney Cpt. Aston wanted her to prepare a formal statement.

23. At 11:43 a.m. on November 20, 2023, Laney emailed Cpt. Aston, Sgt. Giles, and Sgt. Desantis and attached a statement regarding her interactions with Clogston on November 9, 2023, including describing the incidents described above in Paragraphs 15 through 19 in detail, including identifying several witnesses and providing statements from Officer Andrews, Coburn, and four other Emergency Department employees who witnessed the various instances where Clogston made sexually inappropriate comments.

24. On November 22, 2023, Laney returned a missed call from Cpt. Aston around 8:00 a.m. During the call, Cpt. Aston informed Laney she left her duty firearm in her locker and not in

the designated firearm safe and that due to Novant's "zero tolerance" firearm policy, Laney's employment was being terminated. Laney asked if she could review the camera footage that would show her not returning her firearm to the firearm safe and Cpt. Aston declined her request. She then asked Cpt. Aston how he found the firearm in her locker when she put a lock on it. Cpt. Aston responded that there was a lock on her locker but it was not in the locked position. Finally, Laney asked Cpt. Aston why her employment was being terminated under Novant's "zero tolerance" policy when other male public safety officers had committed the same or similar offenses and their employment was not terminated. Laney provided the following examples of violations of Novant's "zero tolerance" firearm policy:

- Officer Antonio Boyd left a loaded firearm in the safe and he was not terminated.
- Officer Mike Gillmore left the gun safe unlocked and open during the entire shift and he was not terminated.
- Officer Wes Autry waived his firearm around the public safety office pointing it in many unsafe directions including at other co-workers and he was not terminated.

Cpt. Aston responded that none of those incidents violated Novant's "zero tolerance" firearm policy and refused to discuss it any further. Notably, Cpt. Aston did not reference Clogston's complaint about purported age discrimination as being a factor in Laney's termination.

25. On or about November 27, 2023, Laney went to the Novant Health Matthews Medical Center to retrieve her personal belongings. When she arrived she met Sgt. Desantis and he escorted her to her locker. Once at her locker, Laney noticed her lock had been placed inside of her locker and it was damaged to the point where it no longer functioned. She pointed it out to Sgt. Desantis and he could not get the lock to function either. Laney then opened her locker door and immediately noticed some of her personal items were missing.

6

Case 3:25-cv-00564-FDW-SCR     Document 1     Filed 07/30/25     Page 6 of 10

## FIRST CAUSE OF ACTION
**(Violation of Title VII – Discrimination Based on Sex)**

26. Laney realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

27. Novant terminated Laney's employment because of her sex in violation of Title VII.

28. Novant's actions were intentional, willful, and/or undertaken in reckless disregard for Laney's rights as protected by Title VII.

29. As a proximate and foreseeable result of Novant's discriminatory conduct, Laney has suffered lost back and future wages, benefits, expenses, and other damages which she seeks from Novant.

30. As a direct and proximate cause of the conduct alleged herein, Laney has suffered and continues to suffer physical and emotional injuries, economic damages, including lost back and future wages and benefits, expenses, and other damages, and noneconomic damages, including, but not limited to humiliation, embarrassment and discomfort, and physical and emotional distress.

## SECOND CAUSE OF ACTION
**(Violations of Title VII—Retaliation)**

31. Laney realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

32. Novant unlawfully retaliated against Laney in violation of Title VII by terminating her employment because she engaged in activity protected by Title VII by complaining about Clogston's sexual harassment.

33. Novant's actions were intentional, willful, and/or undertaken in reckless disregard for Laney's rights as protected by Title VII.

34. As a proximate and foreseeable result of Novant's discriminatory conduct, Laney has suffered lost back and future wages, benefits, expenses, and other damages which she seeks from Novant.

35. As a direct and proximate cause of the conduct alleged herein, Laney has suffered and continues to suffer physical and emotional injuries, economic damages, including lost back and future wages and benefits, expenses, and other damages, and noneconomic damages, including, but not limited to humiliation, embarrassment and discomfort, and physical and emotional distress.

**THIRDCAUSE OF ACTION**
**(Wrongful Discharge in Violation of Public Policy)**

36. Laney realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

37. The public policy of the State of North Carolina as set forth in the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C.G.S. § 143-422.1, prohibits employers from discriminating against employees on the basis of their sex. Laney is female therefore, a member of a protected class. This is specifically established in § 143-422.2.

38. Novant violated the public policy of North Carolina as set forth in N.C.G.S. § 143-422.1 by terminating Laney, a member of the protected class, on the basis of her sex.

39. As a proximate and foreseeable result of Novant's conduct, Laney has suffered lost back and future wages, benefits, expenses, and other damages which Laney seeks from Novant.

8

40. Novant's actions were done maliciously, willfully, or wantonly, or in a manner that demonstrates a reckless disregard for Laney's rights. As a result of Novant's conduct, Laney is entitled to recover punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Laney respectfully requests the following relief:

a) Order Novant to pay Laney for all lost wages and employment benefits from the day Novant discriminated against Laney by terminating his employment until the day of final judgment;

b) Order Novant to pay Laney compensatory damages;

c) Order Novant to pay Laney punitive damages;

d) Order Novant to pay Laney all attorneys' fees, litigation expenses, and costs incurred as a result of bringing this action;

e) Order Novant to pay Laney pre- and post-judgment interest at the highest rates allowed by law on all sums recoverable; and

f) An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Laney demands a trial by jury for all issues of fact.

Dated: July 30, 2025.

    Respectfully submitted,

    s/ Corey M. Stanton
    Philip J. Gibbons, Jr., NCSB #50276
    Corey M. Stanton, NCSB #56255
    **GIBBONS LAW GROUP, PLLC**
    14045 Ballantyne Corporate Place, Suite 325

Charlotte, North Carolina 28277
Telephone:   (704) 612-0038
Facsimile:   (704) 612-0038
Email: phil@gibbonslg.com
       corey@gibbonslg.com

*Attorneys for Plaintiff*